**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

LUIS RAMOS, an individual, and
SONIA RAMOS, an individual,

Plaintiffs,

vs.

ALLIANCE CAS, LLC, a Florida limited liability company, EVAN PHILLIPS, an individual, SCOTT JAFFEE, an individual, and JOHN DOES 1-10, unknown individuals,

Defendants.
_______________________________________/

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiffs, Luis Ramos, an individual, and Sonia Ramos, an individual, sue Defendants, Alliance CAS, LLC, a Florida limited liability company, Evan Phillips, an individual, Scott Jaffee, an individual, and John Does 1-10, unknown individuals, and allege:

**INTRODUCTION**

1. This is an action for violation of 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), and Florida Statute §559.551, *et sequi*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"),to address abusive debt collection violations by Defendants.

***JURISDICTION***

2. Jurisdiction of this Court arises under 15 U.S.C §1692k and 28 U.S.C.§1337, and

supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C.§ 1367.

***ALLEGATIONS AS TO PARTIES***

3. At all times material hereto, Plaintiffs, Luis Ramos and Sonia Ramos (collectively "the Ramos"), were *sui juris* and residents of Broward County, Florida.

4. At all times material hereto, Defendant, Alliance CAS, LLC ("Alliance CAS"), was a Florida limited liability company doing business in Broward County, Florida.

5. At all times material hereto, Defendant, Evan Phillips ("Mr. Phillips"), was *sui juris* and a resident of Broward County, Florida.

6. At all times material hereto, Defendant Scott Jaffee ("Mr. Jaffee"), was *sui juris* and a resident of Broward County, Florida.

7. At all times material hereto, Defendants, John Doe No.s 1-10 (hereinafter referred to collectively as the "Unknown Collectors"), were persons whose identities are presently unknown and who participated in the unlawful collection activity described below. Upon determination of the true names of the Unknown Collectors through discovery, Plaintiffs will amend their Complaint to properly name and join said persons.

8. At all times material hereto, Defendants (hereinafter referred to collectively as "Alliance"), are and were engaged in the collection of consumer debts using instrumentalities of interstate commerce, the telephone or the mails.

9. All acts and omissions of any employee, agent or representative of Defendants, including the Unknown Collectors, detailed herein were within the scope of the employment and authority of the employee, agent or representative and were committed with actual, constructive or implied knowledge and consent of Alliance or were subsequently ratified by Alliance.

## ***FACTUAL ALLEGATIONS***

### *A. Details Concerning Business Model of Alliance*

10. Alliance CAS is a licensed collection company in the State of Florida which specializes solely in the collection of unpaid assessments for community associations, including the Honeyplace Homeowners Association, Inc. ("Honeyplace HOA").

11. Typically, community associations are represented in assessment collection matters by members of the Florida Bar as opposed to collection agencies such as Alliance. Among other things, non-attorney collectors such as Alliance are unable to prosecute lien enforcement proceedings in the courts of the State of Florida and are limited in their ability to recover collection costs by applicable law.

12. In order to market itself as an alternative to attorney collectors, Alliance developed a marketing scheme entitled "S.M.A.R.T. Collection Services" ("SMART Program").

13. According to the website of Alliance at http://alliancecas.com/smart-collections/, Alliance advertises the following concerning the SMART Program:

> The SMART Collections process never requires the Association to pay for any service. In fact, Alliance invests money, time and resources into your community from day one. The cost of letters, envelopes, stamps, certified mail, outbound call center etc. are all expenses Alliance incurs for the benefit of the Association. These monies are not advanced or deferred. They are actually invested monies by Alliance on behalf of the Association with no obligation to repay. Alliance advances all costs for any necessary legal work; i.e. liens and foreclosures. Alliance is a collection firm, not a Law Firm. However, just as Alliance does not charge the Association, any monies advanced for outside legal work, will be of no recourse to the Association at any time.

14. As demonstrated by the above marketing materials, Alliance does not receive payment for collection services directly from associations such as Honeyplace HOA, but rather

attempts to collect fees and charges directly from homeowners. As a result, homeowner associations are by and large either uninformed or disinterested in the amount of fees and charges which Alliance may attempt to collect from homeowners such as the Ramos.

### *B. Details Concerning Consumer Debt*

15. At all times material hereto, the Ramos maintained their usual place of residence and abode at 1785 SW 82nd Terrace, Miramar, Florida 33025 ("Ramos Residence").

16. At all times material hereto, the Ramos Residence was subject to the Declaration of Restrictions and Bylaws of the Honeyplace HOA ("HOA Governance Documents").

17. Like many homeowners during the last several years, the Ramos became delinquent in the payment of their mortgage and homeowner association fees to Honeyplace HOA for the Ramos Residence.

### *C. Abusive Collection Practices of Defendant*

#### 1. Initial Collection Demand

18. Subsequent to the Ramos becoming delinquent in the payment of their homeowner association fees, Honeyplace HOA retained Alliance for the purpose of collecting monies for the homeowner assessments on the Ramos Residence.

19. Commencing in February, 2013 to the date of the filing hereof, Alliance, through its agents, employees and/or representatives acting within the scope of their employment and with the authority of Alliance, began a pattern of conduct reasonably calculated to compel the Ramos into paying monies far in excess of that owed for homeowner association fees to Honeyplace HOA.

20. On or about February 5, 2013, Alliance sent or caused to be sent to the Ramos

written correspondence known more commonly in the collection industry as a "dunning letter" for the purpose of collecting monies for association fees purportedly owed by the Ramos to Honeyplace HOA ("Initial Collection Communication").

21. A true and correct copy of the Initial Collection Communication is attached hereto and incorporated by reference as Exhibit "A."

22. The Initial Collection Communication was signed by Mr. Phillips.

23. Alliance through the Initial Collection Communication stated *inter alia* as follows:

> **Unless, within forty-five days (45) days of the receipt of this letter, you dispute the validity of this debt (or any portion thereof) owed to the association, this office shall assume the debt is valid. If you notify this office in writing within the forty-five days (45) day period that the debt (or any portion thereof) is disputed, this office shall obtain written verification of the debt from the association and mail same to you. Upon the consumer's written request within the forty-five days (45) day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. Alliance CAS is a "debt collector" under the Fair Debt Collection Practices Act. We are attempting to collect a debt, and any information obtained will be used for that purpose.**

(boldface emphasis in original)

24. Alliance through the Initial Collection Communication attempted to collect the sum of One Hundred Dollars ($100.00) as and for "collection fees and costs" ("Initial Collection Fee Claim").

25. For an extended period of time prior to the filing of the instant action, Alliance has maintained a practice and pattern of transmitting or causing to be transmitted dunning letters in the form of the Initial Collection Communication to consumers such as the Ramos for various homeowners and condominium associations in the State of Florida which demanded that the

consumer pay fees and costs in the amount of the Initial Collection Fee Claim.

26. In the Initial Collection Communication, Alliance purposely included below the signature of Mr. Phillips a reference to: "cc: Board of Directors and Property Manager." By information and belief, the "courtesy copy" reference by Alliance was an attempt to unfairly, falsely, deceptively and misleadingly imply to the Ramos as least sophisticated consumers that the Honeyplace HOA received a copy of the Initial Collection Communication when in fact it did not and to falsely imply that the Honeyplace HOA was aware of the Initial Collection Fee Claim when in fact it was not.

**2. Improper Third Party Communication by Defendants**

27. Subsequent to the receipt of the Initial Collection Communication, the Ramos decided to conduct a short sale of the Ramos Residence using a local realtor, to-wit: Maria Perez ("Ms. Perez").

28. In an attempt to obtain information concerning the amount owed to Honeyplace HOA, Ms. Perez contacted Alliance directly to obtain a "ballpark" figure of the unpaid assessment claim of Honeyplace HOA to proceed with a short sale request to the lender of the Ramos Residence.

29. At no time did the Ramos give prior consent directly to Alliance to allow Alliance to speak with Ms. Perez as mandated by 15 U.S.C. §1692c(b).

30. In her telephone call to Alliance, Ms. Perez was informed by Alliance that the pay-off for the Honeyplace HOA assessments was approximately $4,500.00, which was over $3,000 more than the prior collection demand by Alliance.

**3. Attempt to Obtain Unconscionable and Unlawful Collection Fees by Defendants**

31. In late August, 2013, Ms. Perez requested that Alliance provide an estoppel letter to facilitate the short sale. In apparent response to the estoppel demand, Alliance sent or caused to be sent to the Ramos a letter dated September 16, 2013, which purported to provide estoppel information for the assessment claim of Honeyplace HOA ("Estoppel Letter").

32. A true and correct copy of the Estoppel Letter is attached hereto and incorporated by reference as Exhibit "B."

33. The Estoppel Letter was signed by Mr. Jaffee.

34. Pursuant to the Estoppel Letter, in addition to maintenance fees through September 16, 2013 of $846.00, and accrued interest of $234.77, Alliance claimed the right to the following additional charges:

| **Description** | **Amount** |
|---|---|
| Legal Fees, Rvw., Admin.Support | $ 460.00 |
| Accounting Review/Audit | $ 235.00 |
| Archive | $ 260.00 |
| Document Verification/Account Setup | $ 395.00 |
| Estoppel Fee | $ 350.00 |
| File Transfer and Closing Fee | $ 425.00 |
| Public Records Search | $ 265.00 |
| Collection Fees and Costs | $2,910.00 |
| **TOTAL AMOUNT** | **$6,380.77** |

(collectively "Estoppel Collection Charges")

35. The Estoppel Collection Charges constituted fabricated, unreasonable and unconscionable fees that were not authorized under the HOA Governance Documents or Florida law.

36. It is or was the policy and practice of Defendants to attempt to collect

unconscionable and unlawful collection fees and charges from financially distressed homeowners who were attempting to sell residential properties under short sale or other similar conditions. By refusing to allow closings to proceed without such fees and charges, Defendants could delay the sale process until the homeowner pays the fees and charges.

37. By information and belief, as the Defendants did not charge homeowners and condominium associations such as Honeyplace HOA directly, the homeowners and condominium associations were unaware of the collection fees and charges which Defendants were attempting to collect from persons such as the Ramos.

38. In the Estoppel Leltter, Alliance purposely included below the signature of Mr. Jaffee, the reference: "cc: Board of Directors and Property Manager." Upon information and belief, the "courtesy copy" reference by Alliance was an attempt to unfairly, falsely, deceptively and misleadingly imply to the Ramos as least sophisticated consumers that the Honeyplace HOA received a copy of the Estoppel Letter when in fact it was not and to falsely imply that the Honeyplace HOA was aware of the Estoppel Collection Charges when in fact it was not.

**4. Attempt to Obtain Payment from Third Parties**

39. In response to Ms. Perez, Mr. Jaffe requested a copy of the closing statement for the anticipated short sale of the Ramos Residence.

40. Upon receipt of the closing statement from Ms. Perez, on or about September 18, 2013, Mr. Jaffe represented to Ms. Perez that as the real estate agents were making "full commissions," then the agents would need to contribute 1% each to Alliance to satisfy the Estoppel Collection Charges.

41. Stunned, Ms. Perez requested that Mr. Jaffe confirm that Alliance was seeking

$3,740.30. In response, Mr. Jaffe informed Ms. Perez that "if we can get the final figure of $4,500.00, we can have an agreement and the estoppel fee must still be paid."

## C. *Practices of Defendants*

42. It is or was the policy and practice of Defendants to send collection letters in the form of Exhibit "A" to consumers in a manner which was reasonably calculated to confuse or frustrate consumers with respect to advising consumers as to the right of consumers with respect to the validation of consumer debts under 15 U.S.C. §1692g.

43. It is or was the policy and practice of Defendants to send collection letters in the form of Exhibits "A" and "B" to consumers wherein Defendants charged or attempted to charge for collection fees and charges for which the Defendants were not entitled to recover from consumers such as the Ramos.

## COUNT I - ACTION FOR VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692 *ET SEQUI.*)

44. This is action for violation of 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA")

45. The Ramos reallege and reaffirm the allegations contained in Paragraphs 1 through 43 above as if set forth hereat in full.

46. At all times material hereto, the Ramos were "consumer(s)" as said term is defined under 15 U.S.C. §1692a(3).

47. At all times material hereto, Honeyplace HOA was a "creditor" as said term is defined under 15 U.S.C. §1692a(4).

48. At all times material hereto, the assessment(s) purportedly owed to Honeyplace

HOA was a "debt" as said term is defined under 15 U.S.C. §1692a(5)

49. At all times material hereto, Defendants were "debt collector(s)" as said term is defined under 15 U.S.C. §1692a(6).

50. As more particularly described above, Defendants have violated the FDCPA in that Defendants have:

(a) communicated with third parties in connection with the collection of a debt in contravention of 15 U.S.C. §1692c(b);

(b) engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in contravention of 15 U.S.C.§1692d;

(c) made a false, deceptive or misleading representation or means in connection with the collection of a debt in contravention of 15 U.S.C. §1692e;

(d) made a false representation of the character, amount or legal status of any debt in contravention of 15 U.S.C. §1692e(2)(A);

(e) made a false representation of the services rendered or compensation which may be lawfully received by Defendants as debt collectors in contravention of 15 U.S.C. §1692e(2)(B);

(f) used any false representation or deceptive means to attempt to collect a debt in contravention of 15 U.S.C. §1692e(10);

(g) used unfair and unconscionable means to collect or attempt to collect a debt in contravention of 15 U.S.C. §1692f; and

(h) the collection of any amount (including any interest, fee, charge or

expense) incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law in contravention of 15 U.S.C. §1692f(1).

51. 15 U.S.C. §1692g provides, in pertinent part, the following:

> <u>Notice of Debts; Contents</u>
>
> Within five days after the initial communication from the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing:
>
> (a) The amount of the debt;
>
> (b) The name of the creditor to whom the debt is owed;
>
> (c) A statement that unless the consumer, within thirty days after receiving the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (d) A statement that if the consumer notifies the debt collector in writing within the thirty day period, the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (e) A statement that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

52. Alliance CAS violated the requirements of 15 U.S.C. §1692g by failing to provide the Ramos with a notice of validation rights as required by the FDCPA.

53. As a direct and proximate result of the violation of the FDCPA by the Defendant, the Ramos have been damaged. The damages of the Ramos include but are not necessarily

limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

54. Pursuant to 15 U.S.C. §1692k, the Ramos are entitled to recover actual damages together with statutory damages of $1,000.00, along with court costs and reasonable attorneys fees.

55. The Ramos have retained the undersigned law office to represent their interest herein and are obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiffs, Luis Ramos, an individual, and Sonia Ramos, an individual, demand judgment against Defendants, Alliance CAS, LLC, a Florida limited liability company, Evan Phillips, an individual, Scott Jaffee, an individual, and John Does 1-10, unknown individuals, for compensatory and statutory damages, together with interest, costs and attorneys fees pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

56. This is action for damages for violation of the Florida Consumer Collection Practices Act ("FCCPA") brought herein pursuant to the doctrine of pendant jurisdiction.

57. The Ramos reallege and reaffirm the allegations contained in Paragraphs 1 through 43 above as if set forth hereat in full.

58. At all times material hereto, the the assessment(s) purportedly owed to Honeyplace HOA constituted a "debt" or "consumer debt" as said terms are defined under Florida Statute §559.55(1).

59. At all times material hereto, the Ramos were "debtor(s)" or "consumer debtor(s)" as said terms are defined under Florida Statute §559.55(2).

60. At all times material hereto, Honeyplace HOA was a "creditor" as said term is defined under Florida Statute §559.55(3).

61. At all times material hereto, Defendants were "debt collector(s)" as said term is defined under Florida Statute §559.55(6).

62. As more particularly described above, Alliance has violated the FCCPA in that Alliance has claimed, attempted or threatened to enforce a debt when Defendants knew that the debt was not legitimate or asserted the existence of a legal right when such person knows the right does not exist, in contravention of Florida Statute §559.72(9).

63. As a direct and proximate result of the violation of the FCCPA by the Defendants, the Ramos have been damaged. The damages of the Ramos include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

64. The Ramos have retained the undersigned law firm to represent their interest herein and are obligated to pay said law office a reasonable fee for its services.

65. Pursuant to Florida Statute §559.77, the Ramos are entitled to recover actual and punitive damages together with statutory damages of $1,000.00, along with reasonable attorney's fees and court costs.

WHEREFORE, Plaintiffs, Luis Ramos, an individual, and Sonia Ramos, an individual, demand judgment for damages against Defendants, Alliance CAS, LLC, a Florida limited liability company, Evan Phillips, an individual, Scott Jaffee, an individual, and John Does 1-10, unknown individuals, for compensatory, statutory and punitive damages, together with interest, costs and attorneys fees pursuant to Florida Statute §559.77.

**DEMAND FOR JURY TRIAL**

Plaintiffs, Luis Ramos and Sonia Ramos, pursuant to Rule 38, Federal Rules of Civil Procedure, demand a trial by jury of all issues so triable.

ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
rphyu@aol.com

ALLIANCE CAS, LLC

February 5, 2013

*<u>Sent Via Certified & Regular U.S. Mail</u>*

Luis Ramos
Sonia Ramos
1785 SW 82 Terr.
Miramar, FL 33025

## DEMAND NOTIFICATION FOR IMMEDIATE PAYMENT

RE: Association: Honeyplace Homeowners' Association, Inc.
Unit Owner: Luis Ramos & Sonia Ramos
Reference No.: HP-07

Dear Luis Ramos & Sonia Ramos:

Alliance CAS has been retained by **Honeyplace Homeowners' Association, Inc.** to effectuate the collection of your delinquent account. Do note the Association will file a Claim of Lien against the above described unit for failure to timely pay its association assessments unless payment in the amount of **$805.00** is received by this office no later than **forty-five days (45)** days from the receipt of this letter. This figure represents your delinquent balance of **$705.00** as well as a **$100.00** for the collection fees and costs. *All payments checks or money orders shall be payable and mailed to: Alliance CAS, LLC.* at the address listed below. Until the above described delinquent amount is paid in full, all payments should be directed to Alliance CAS. Failure to fully comply with this demand letter for payment, may result in the acceleration of assessments or installments thereof, if provided for in the governing documents for the association.

The next regular bi-annual assessment in the amount of **$141.00** is due the 1st of next bi-annual schedule. If not paid by the 15th day of the month, the account will be assessed a **$25.00** late fee and any unpaid amounts shall bear interest as per the Association Documents.

**Unless, within forty-five days (45) days of the receipt of this letter, you dispute the validity of this debt (or any portion thereof) owed to the association, this office shall assume the debt is valid. If you notify this office in writing within the forty-five days (45) day period that the debt (or any portion thereof) is disputed, this office shall obtain written verification of the debt from the association and mail same to you. Upon the consumer's written request within the forty-five days (45) day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. Alliance CAS is a "debt collector" under the Fair Debt Collection Practices Act. We are attempting to collect a debt, and any information obtained will be used for that purpose.**

If you previously received a discharge in bankruptcy, the association seeks only to enforce its in-rem remedies with respect to any pre-petition assessments. No personal judgment will be sought for any assessments which came due prior to the date of any such bankruptcy petition was filed. Upon this firm's receipt of the total amount stated above within the time period stated herein, your account for assessments shall be brought current through **February 28, 2013.** All payments shall be made by Cashier's Check or Money Order and made payable to **Alliance C.A.S.** and shall be mailed to or delivered to: **ALLIANCE CAS: COLLECTION DEPARTMENT, P.O. BOX 477, HALLANDALE BEACH, FLORIDA 33008,** unless otherwise directed by Alliance CAS. in writing. **You can avoid further action by the Association please contact Scott Jaffee at Alliance CAS (954) 668-2448 immediately.**

Evan Phillips
Alliance CAS, LLC

cc: Board of Directors and Property Manager

EXHIBIT "A"

# ALLIANCE CAS, LLC

September 16, 2013

1785 SW 82 Terr.
Miramar, FL 33025

RE: **Association: Honeyplace Homeowners' Association, Inc.**
**Property Address: 1785 SW 82 Terr. Miramar, FL 33025**
**Reference No.: HP-07**

Alliance C.A.S. has been retained by the above referenced Association to effectuate the collection of the property's delinquent account. The above described account will be brought current upon the receipt of **$6,380.77.** This payoff figure shall remain valid until **October 7, 2013 at 5:00 PM.** Payment must be received by this office on or before that date and time. The following is a breakdown and description of the sums due and owing:

| **Description and Date Due:** | **Amount** |
|---|---|
| Maintenance through September 16, 2013 | $ 846.00 |
| Interest | $ 234.77 |
| Legal Fees, Rvw., Admin. Support | $ 460.00 |
| Accounting Review / Audit | $ 235.00 |
| Archive | $ 260.00 |
| Document Verification / Account Setup | $ 395.00 |
| Estoppel Fee | $ 350.00 |
| File Transfer and Closing Fee | $ 425.00 |
| Public Records Search | $ 265.00 |
| Collection Fees and Costs | $2,910.00 |
| TOTAL AMOUNT | $6,380.77 |

The next regular bi-annual assessment in the amount of **$141.00** is due If not paid by the 10th day of the account will be assessed a $25.00 late fee and any unpaid amounts shall bear interest at the rate of 18% per annum. **The Association requires the association dues in the amount of 141.00 to be paid at closing.**

All the assessments must be paid in full to the Association prior to closing. A copy of the warranty deed must be submitted with the payoff to Alliance CAS.

All payments due pursuant to this payoff request shall be made by Cashier's Check or Money Order and made payable to **Alliance C.A.S.** and shall be mailed to or delivered to: **ALLIANCE C.A.S.: COLLECTION DEPARTMENT, 1000 E. HALLANDALE BEACH BLVD, SUITE B HALLANDALE BEACH, FLORIDA 33009,** unless otherwise directed by Alliance CAS, in writing. **You can avoid further action by the Association please contact Alliance C.A.S. (954) 668-2448 immediately.**

ALLIANCE C.A.S.

Scott Jaffee
Alliance C.A.S., LLC

cc: Board of Directors and Property Manager

*Nothing herein shall constitute approval of the Association to the transaction which is the subject of this request. Please contact the Association for specific approval requirements. This is an attempt to collect a debt. This communication is from a debt collector. Any information obtained will be used for that purpose. Please note: If the property is governed by more than one Association, the owner is responsible for obtaining separate Estoppel information for each association..ch association..*

EXHIBIT "B"